Good morning, Your Honors, and may it please the Court, Brianna Mircheff on behalf of Miguel Valle. Your Honors, I intend to reserve about three minutes of my time for rebuttal, but I will watch my own clock. Okay, we'll try to help you. Keep your eye on the clock, though. Okay. I will, Your Honor. This case presents a single question that had a drastic effect on the guideline calculation, and that is, was the District Court correct to decide that Mr. Valle's instant offense commenced in 2004? Now, the District Court ruled against Mr. Valle on both a legal ground and a factual one, but as I understand the government not to defend the legal ground, I'll go directly to the factual one unless the Court directs me otherwise. So there's two avenues to remand in this case on the factual question. The first is that the District Court committed error when it found that Mr. Valle had lived at the same address for the entire period from 1998 to 2017. Now, we know from the redacted documents that that can't be so because the unredacted documents show that there were multiple zip codes involved, and so clearly he couldn't have lived at the same street address. That's even more clear from the unredacted documents that are the subject of the Rule 10 motion. The government claims that although there were different postal addresses that was in the same city, since we're talking about within the United States, for our purposes, does that matter? Well, it does matter, Your Honor, and it's important, right? The impact of what the District Court believed, assuming the District Court believed that he actually lived at the same street address in 1997, in 98, in 2000, in 2004, and in 2017, and in 2018, that does tend to suggest that he had a very stable residence and that he was probably continuously residing in the United States. The fact that there were different street addresses doesn't mean that he couldn't possibly have been in the United States in the same time. It's simply of a different import than the fact that the District Court assumed was true. In this case, if I recall correctly, Mr. Valle did not object at the time, so are we reviewing for plain error? He did not object to this factual error. He did object more broadly to the fact that the District Court could not find that he continuously resided in the United States. But if plain error applies, I think it's clearly met here. In this case, as the government agrees, even on the redacted documents, it said that the District Court would make, that it would be obvious that there were different street addresses because of the different zip codes. On the question of were Mr. Valle's substantial rights affected, I think they were, because the import of the finding that the District Court made would have had an outsized effect on the fact, on the conclusion that he resided here from 2004 to 2017. We don't really know that for sure, though, do we? I mean, I think if we agree with you on this argument, we would just need to remand for the District Court to reconsider, wouldn't we? So the Court certainly could remand for the District Court to reconsider this. It doesn't seem like agreeing with you that the District Court made a mistake about the address obviously means that he wasn't continuously here, such that we know for sure his substantial rights were affected. Well, so, and I think that brings me to the second argument here, which was that this was a tenuous factual finding regardless of that factual error, right? So the District Court, we would say, erred by finding that he was continuously present from 2004 to 2017 regardless of that mistake. That's true because the government presented no direct evidence that Mr. Valle was here for any point between 2004 and 2017. No employment records, no address, no school records of his children, and importantly, no law enforcement records. As we know, Mr. Valle was under a bench warrant that entire time, and given his history in the past, he'd gone very few months without avoiding, or gone very few months without having a law enforcement contact. The fact that there was no contact between 2004 and 2017 when he was under a bench warrant does tend to suggest that he was not here. Now, with none of that direct evidence that he was actually present at any point between 2004 and 2017, the District Court instead relied on his general desire to be in the country or his general desire, the general difficulty of crossing back and forth. And this court has said that that inference has some weight. For example, in Garcia-Jimenez, the court said that where we're talking about a two- to three-year period and there are only brief gaps in the record between employment records and jail records, the court can say, well, to cover those brief gaps, although we can't say for sure he couldn't possibly have left, we're going to say that the general desire to be in the country covers those brief gaps. This is a much different case, right? This is a 13-year gap where there's no direct evidence, where there's no reason to think he was in the country. We also know that he did have some ties to Mexico, right? The records reflect that his parents lived in Mexico. I assume his parents would have been aged by this point. He was 35 or so. We know that he had lived in Mexico until he was about 30 years old. And so it wasn't as though he came here as a one-year-old child and would have had no ties to Mexico. He came as an adult. So where there's no direct evidence that Mr. Valle ever was in the – I'm sorry, no direct evidence that he was in the United States for those 13 years, and where he has some ties to Mexico, I do think the inference is much weaker than what you can draw from the fact that he simply may have had a desire to remain in the United States. Under Jordan, is it the government's obligation to prove by clear and convincing evidence that he was here during the 2004-2017 period in order to satisfy the element in this case? So that is our position, and that was the government's position below. On appeal, they say that they would only have to find by a preponderance, but I think that simply isn't so. Jordan says to the contrary, right? Jordan says to the contrary, and it's based on the impact of the finding, not on the nature of the finding. This would have had a 4-6 time, right? Without this guideline finding, his guidelines would have been 6-12 months. Instead, they were 37-46. When we think about this question, can we assume you lose on the other question and you'd still win on this question? I think so. Yeah. I think if the court agrees with me on that point, the court could say that regardless of this error, that even if the court had made the proper factual finding, there was not enough evidence. Or even if we assume he had the same address the whole time, that wouldn't be enough? Is that your position? That is my – well. We know he didn't have the same address, right? So I guess we know that at least there were two addresses. So I don't – I wouldn't ask the court to assume that he had the same address the entire time. But I think regardless of this error that the district court made, even if the court had found the correct facts, there was not enough evidence in the record to support that. You can't assume clear and convincing evidence. Is that a fair statement? You can't – In other words, if the government have to show by clear and convincing evidence under Jordan, where he was during that period, based on collateral data, is it proper to say that if we assume something based upon what the government does, that that's not enough to meet the Jordan standard? I mean, I don't know that – I don't think you need to go that far. I think what it is is that the inference in this case is not there, right? So I don't know that it could never be the case that there could be indirect evidence. I think Garcia-Jimenez used somewhat indirect evidence to fill very, very short gaps. It didn't support a finding of a 13-year gap with no direct evidence. If we agree with you on this and think there wasn't clear and convincing evidence, do we remand or do you just win and he doesn't – and somehow we instruct that the sentence be lowered? If that's true, then I think that he should just win, right? So there's case law out there saying that if he – That the government shouldn't have a chance to come up with other evidence? Right, that the government – where an issue has been fully aired below, the government doesn't get a second bite at the apple. The apple. Sorry, and that's Espinosa-Morales. The site for that is 621 F. 3rd, 1141. Do you want to save any of your time? We've kind of run you up a little bit there. I do. Okay. Thank you. Well, let's hear from the government. May it please the Court, Lawrence Cole for the United States, representing the defendant appellee. Your Honors, the defendant – the district court did not clearly err in finding – making a factual finding that the defendant continuously remained in the United States from when he was arrested for driving under the influence in 2004 until he was arrested for molesting his niece in 2017. What – Are you – Sorry. Okay. Are you agreeing now that the standard is clear error? Oh, the standard is certainly clear error for finding a factual finding. Oh, I'm sorry. I'm sorry. Are you agreeing now that the standard is – sorry. Clear and convincing. Clear and convincing. Your Honor, we still maintain the position we took in our briefs on appeal that the court, because this is a fact that relates to the charge conduct, that it would be proper to decide it by preponderance. But the court really doesn't need to reach that issue because Judge Selma, unlike cases where that was potentially a problem, he didn't decide by preponderance. He decided certainly by clear and convincing. He actually found beyond a reasonable doubt. So there's really no – Well, he said that once, but he said kind of inconsistent things, didn't he? I was concerned about that during the sentencing hearing, and so I asked him specifically to make sure that he was not saying that the factual finding was by preponderance. And he said – I think if you look at when he later mentions preponderance, he says except as stated otherwise. What's your best – what's the government's best evidence that Valley remained in Santa Ana between 2004 and 2017? The fact that whenever he – the fact that he came back and never left – there's no evidence that he ever left except when the government forcibly removed him. That every time he was removed, he was removed twice, both times he came right back quickly to the same city where he had a wife and minor children. So what is this, a criminal algorithm? Is that what we're talking about? In other words, if there's a pattern, then that proves that that's where he is. Is that what you're saying? It certainly provides significant support to make an inference by which that can be proven, especially when there's no evidence to the contrary, as here. And that's what this Court found in Garcia-Gimenez. There, although admittedly, that was a much shorter period. There's no question that was a much shorter period. But the key thing is, when you compare that case to this case, even in Garcia-Gimenez, there were long periods of time where there was no evidence as to where the defendant was. Six months. But this is the government's burden. This is a criminal case. Correct. And the government has to show that each of the elements is met. And it seems to me that there's a big gap here, and you've got all these little assumptions, and you say, well, he's got family here. He must have been here. If you don't prove it, he must have been here just because that's, and in the past, he'd come back. Is that enough in a criminal case? Definitely, Your Honor, in this situation, because there was no contrary evidence. And the government... But that's not his burden, is it? No, not at all. Certainly not. It's the government's burden. But that burden was met by showing his repeated return after being removed, consistently living in the same city, having minor children here. Everything showed that he wanted to be here, not in Mexico. In fact, when he first came here, he came in 1994. He remained for four years until 1999. So even then, when he was newer to the country, when he was younger, had fewer ties because his children weren't born yet, he still stayed for four years and didn't leave to go back then. So when he was questioned in 1998, he said he had last entered in 94. So even then, he didn't leave. So the point, Your Honor, this court found in Garcia-Gimenez, it cited the absence of evidence that he had ever left as one of the factors that it considered that supported the inference that he had not left. As this court said then, the government demonstrated that he had no reason to leave the United States during that time, and it would be illogical for him to leave because he would subject himself to the risk of not being able to come back. That's the same here. That sounds very much to me like you're trying to shift the burden, the absence of evidence that he ever left. Why would the government ever produce evidence that he left when they're trying to prove that he stayed? Well, Your Honor, I think if there was... When would that evidence ever come to the district court? If there was evidence that he left that I think in this situation certainly would have been favorable to the defense and the government certainly would have had a responsibility to produce that to the defense. And I think the government in that situation would not be acting appropriately if it knew that there was evidence like that and the defense didn't come forward with it and it was arguing this court should find, the district court that is, should find that he never left. I don't think that would be appropriate for the government to do that. The government cites Garcia-Gimenez, but in that case, if I recall correctly, the government had evidence that he had been in prison during part of the time that was being counseled. So there's some actual data that shows he's there. That's true. Whereas here, you've got this vacuum of this, what is it, a 14-year period or 13-year period when it just, there's nothing there. Just the presumption that because his family is still there. Now, is it a human thing? I get that. I understand that. But as you very well know, there are lots of people who are in Mexico and other places that have been removed from the country that would love to be back with their families in the United States and they can't do it and most of them don't because they don't want to go to prison. So I'm not sure I buy the idea that just because his family is here that automatically that satisfies the government's burden. Well, Your Honor, in the situation that the court mentioned, those would be people who are out of the country. This is someone who, there's no dispute, he was back here in 2004. I understand. Defense can see. The only question is, once he was here, did he decide to go back to Mexico without any legal way to come back and take the risk of not being able to come back? And although the court used the word presumption, I would not argue there's any presumption. And certainly I'm not trying, the government was not trying to shift the burden. Merely we're arguing that it was an inference. And just like in Garcia-Gimenez, it was a reasonable inference. And because the standard is clear error, on appeal, the defense has to show that it would be illogical or implausible or lacking support in the record to draw that inference. That's a deferential standard. And Judge Selman, looking at this, made that conclusion, the same conclusion made in Garcia, albeit over a longer period of time. And with the prison. Correct. But again, in Garcia-Gimenez, although that's certainly true, Your Honor, there were two periods of approximately six months that were completely unaccounted for in that case. Obviously, that's almost a year worth of time. Somebody easily could have left the United States and gone back to Mexico during that time. So the point here is, although it's a much longer period of time, that there's nothing to show that he left and the inference that he would want to remain is a strong one based on his prior conduct, his shown desire to be here, children here, and residents in the same city. Did Your Honor have a question? I'm wondering whether the fact that the judge seems to have thought that this issue didn't matter at all taints the analysis of the issue. Because the judge seems to have thought that it didn't matter whether he was continuously here or whether the government needed to prove these continuously here. So I just wonder whether that kind of colors the discussion then that follows. The court, it sounds like, is referring to the initial legal conclusion that the court made. I don't think the record shows that. I think that Judge Selma, after saying that, went on to describe in detail the reasons why he thought that the factual finding was still properly made. And laid that out in detail, and I think conscientiously went over that. And certainly during the hearing, that was more of the focus, was on the factual part. There wasn't really a lot of discussion on the legal point. But he said... What do we do with this address issue? First of all, Your Honors, I think it's not necessarily clear there even was an error at all. I think the fact that the defense didn't even raise it during the hearing shows that the parties all understood that to simply be a sort of a shorthand or an efficient way of referring to the same city. But it doesn't really make sense. I mean, I guess I've never heard anyone say you live at the same address when they mean you live in the same city. A fair point, Your Honor. But I think then you go on to how is that to be reviewed? Was it, as we argue, plain error, in which case the defense would have to show that it affected the outcome? But even if not, it still would be subject to harmless error. And the court there, the district court, cited... It was only four words that referred to the address in the court's ruling. It mentioned four other factors. In addition to that, the clear pattern of return after each removal, the strong inference that he wanted to remain in the United States, that there was no evidence he ever returned to Mexico and that he had family here. So the address is just one small part of that. So I think it's clear from the court's finding that although the court did point that out, if it was an error, and the court did actually think that it was the same residence, that there were many other things that the court was looking at. And in addition, I would say, on the address issue, the defense, in their briefs, argue that that was a central thing, it was critical that it was the same address. I don't think that's really correct when you look at the question here. The issue isn't did he live in the same house. The question is did he want to stay in the United States and leave left. And whether when he was in Santa Ana he happened to choose to move to a different house or a different apartment at different times doesn't really show anything about whether he wanted to stay in the U.S. But it might show that he was gone for a year and then came back and had a different address, right? I mean, there is some reason someone might have different addresses. And in fact, there's a very good reason here. Two of the times there, he was removed from the United States. I mean, it's important not to lose track of that. Two of the times that he had those different addresses were after his removals. So there's no question he was gone then, which is a different question from whether he was here later from 2004 to 2017. Okay. Well, your time is up. Unless the other of my colleagues has an additional question. Nothing more. Thank you. Thank you. Thank you. So we have a little rebuttal time, I believe. I'll speak really briefly to the other points, right? So the government talks about the other bases for the district court's finding. But I mean, the district court talked about the pattern of return two times, right? There were only two returns. That's barely a pattern. And notably, after the 2002 return, he didn't return for two and a half years, or at least that's the next time he was known to be in the United States. As for family, there's no record of the family situation after 2000, right? That's the last time that there's any information in the record as to whether the whereabouts of those individuals, whether the family remained intact, whether we know that Mr. Valle's wife was a Mexican citizen, whether she herself had issues. There's simply no, there's no information in the record about their whereabouts or the situation after 2000. And then the other two are really just the Garcia Jimenez factors, the desire to remain in the country and the difficulty being here. I've addressed those, but I simply think, yes, to cover brief gaps of three, four months a week here and there, sure. But as time goes on, that inference simply becomes weaker. When you have ties in Mexico, the chances that you have a family member who has an illness, there's a wedding, there's a funeral, there's a quinceañera, there's some other reason that you're going back to deal with family situations means that that inference is much weaker than it is to cover a mere three or four month gap. Unless the court has questions, I have nothing else. I think not. Thanks to both counsel for your argument. We appreciate it. The case just argued is submitted.
judges: M. Smith, Friedland, Bastian